UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANGELA ADAMS LICENSING, LLC and<br>ANGELA ADAMS DESIGNS, LLC<br><br>                  Plaintiffs<br><br>   v.<br><br>SURYA CARPET, INC.<br><br>                 Defendant | CIVIL ACTION<br>DOCKET NO. 2:07-cv-00077-DBH |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiffs Angela Adams Licensing, LLC and Angela Adams Designs, LLC ("Angela Adams") ask this Court to deny defendant Surya Carpet Inc.'s ("Surya's") motion for summary judgment, which is limited to the issue of substantial similarity.[1]  In support of its opposition Angela Adams submits the following incorporated memorandum of law.

**<u>INTRODUCTION</u>**

It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.

-- Justice Oliver Wendell Holmes
*Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251-52 (1903).

Despite Justice Holmes' warning, Surya now asks this Court to act as both critic, applying an unworkable dissection test to reveal the protectable aspects of the Lulu design, and ordinary observer, comparing the deconstructed work to the Goa design.  The Court should refuse both of Surya's invitations.

---

[1] For purposes of its motion Surya has only conceded access, however, in moving only for judgment on the issue of substantial similarity it has also implicitly conceded to Angela Adams' ownership of a valid copyright and that sufficient probative similarity exists to raise the inference of actual copying, and therefore, the Court's inquiry may

In their motion, Surya presents the usual grab-bag of defenses (independent creation, unoriginal, merger), concocts a new and unprecedented standard for originality, seeks to apply a test for infringement which is entirely inapplicable to abstract designs, and takes its entire brief to dispel what is immediately apparent to even the most casual observer – the two works appear substantially similar to one another.

As the design world recognized almost immediately upon introduction of the Lulu design in 1999 – it is not a simple depiction of beach stones or a unique arrangement of ovals. It is, rather, an entirely original abstract design that incorporates, in a unique way, a number of unusual design elements. Nothing in Surya's papers contradicts this.  To the contrary, Surya's own evidence proves that the Lulu design is both original and unique and unlike any other design, except for the Goa design.

Defendant cannot rewrite the Copyright Act or explain away the multiple and pervasive similarities between the Lulu and Goa designs. There are genuine issues of material fact. The motion should be denied.

## STATEMENT OF DISPUTED FACTS

### I.  THE LULU DESIGN

Angela Adams is a local design firm, best known for its high quality rugs, which have been descried as "unframed artwork for the floor."  Plaintiff's Response to Defendant's Amended Statement of Material Facts ("Plf. SMF") at ¶73.  Angela Adams also applies its designs to other design items, such as fabrics, pillows, glassware and furniture.  *Id.* at ¶74. In the ten years Angela Adams has been in business, it has received national recognition as a trend-setter in the use of organic, nature inspired designs that have "provid[ed] a refreshing perspective

---

focus on the "substantial similarity" requirement in the context of infringement. *See Green v. Lindsey*, 885 F.Supp. 469, 479 (S.D.N.Y. 1992).

2

to an industry mainstreamed by ubiquitous trends." *Id.* at ¶75.  Angela Adams has succeeded in creating, marketing and selling its unique and fashionable designs by virtue of the creativity and hard work of its employees and its considerable expenditures in promoting designs to create a national market demand.  *Id.* at ¶76.

One of Angela Adams' hallmark designs is the copyrighted Lulu design at issue here, which is among the company's most recognized designs.  *Id*. at ¶77.  The Lulu design has been featured extensively in the press, including *The Wall Street Journal* and *The New York Times*. *Id.* at ¶78.  The design appears on a wide range of products, from bedding and bath products sold at *Bed Bath and Beyond*, where Angela Adams is a featured "specialty store" among the likes of Kate Spade, Nicole Miller and Liz Claiborne, to one of a kind Collection Rugs.  *Id.* at ¶79.

The Lulu design was created by Angela Adams ("Ms. Adams") in 1999 and first began appearing in the companies' custom made Collection Rugs that same year.  *Id.* at ¶80.  Being custom rugs, Collection Rugs bearing the Lulu design were produced in a number of different colors and sizes, including a various shades of green.  *Id.* at ¶81.  In 2005 retail rugs featuring the Lulu design were introduced in a green colorway (the "Sprout" colorway).   *Id*. at ¶82. Additional colorways followed.  *Id.* at ¶83.

## II.  SURYA'S INFRINGEMENT OF THE LULU DESIGN

In the early summer of 2006 Ms. Adams saw an advertisement for Surya's Goa design in a trade publication.  Stricken by the similarity to the Lulu design, Ms. Adams notified counsel, who subsequently sent a cease and desist letter to Surya in September 2006. *Id.* at  ¶84.  Counsel for Surya, promised a response in "two to three weeks time," however, no response was forthcoming.   *Id*. at ¶85.  Counsel for Angela Adams repeatedly attempted to contact Surya's counsel, but to no avail.  *Id.* at ¶86.  At this point, Surya had been selling the Goa design for

nearly a year, and it was advertising the design regularly in trade publications. *Id.* at ¶87. Not having heard from Surya, plaintiffs filed this action on May 1, 2007. *Id.* at ¶88.

Surya continues to sell the Goa design, and even introduced two additional colorways after receiving Angela Adams' cease and desist letter. *Id.* at ¶89. In fact, between April 2004 and March 2006, Surya's President, Satya Tiwari, estimates that the company added approximately 350 new rug designs to its line, including two collections devoted to contemporary designs, which include 4 designs, in addition to the Goa design, that appear substantially similar to Angela Adams' designs. *Id.* at ¶90. Surya also continues to advertise the Goa design widely, attracting sales for Surya, while confusing Angela Adams' customers, and the industry as a whole, as to the origin of the design. *Id.* at ¶91. Surya's exploitation of the Lulu design also sends the (incorrect) message that Angela Adams tolerates such conduct, thus encouraging others to introduce knock-offs, such as the "Fairchild" and "Zane" rugs being sold by Euroway. *Id.* at ¶92.

Surya's account of the development and creation of the Goa design relies solely on the self-serving, conclusory and uncorroborated declaration of a long-time Surya employee, Mr. Mishra. Despite repeated requests for a deposition of this witness, who resides in India and allegedly cannot or will not attend trial, Surya has not proffered Mr. Mishra for cross-examination about his far-fetched account that he drew the Goa design from an advertisement depicting pebbles on mesh. If that testimony were material to this motion – which it is not – it would be subject to opposition on yet another ground under Rule 56(f).

In fact, the similarities between the Lulu and Goa designs are so pervasive as to dispel any possibility that they are the result of coincidence. The elements shared by the designs are highly unusual, if not novel. Professor Wethli, who has practiced and taught visual arts for more

than 30 years, states that the combination of multiple similarities is remarkable and would be unlikely to arise had the works been independently created. *Id.* at ¶103. At the very least these similarities raise disputed issues of fact that should be resolved by a jury.

## ARGUMENT

### I.   AS AN ORIGINAL COMPOSITION COMPOSED OF UNIQUE ELEMENTS, THE LULU DESIGN IS ENTITLED TO BROAD COPYRIGHT PROTECTION.

In an attempt to avoid infringement defendant argues that Lulu design is entitled to only "thin" copyright protection. Def. Br. at 11  That argument references the continuum of protection afforded copyrighted works, between highly original works entitled to "broad" protection, at one end, and works of a primarily factual or functional nature, to which only "thin" protection is afforded, at the other. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446-47 (9th Cir. 1994). Defendant's argument is flawed, because the work at issue here is neither factual nor functional in nature; instead as a highly original and unique visual work it should be afforded the broadest protection.

The two cases cited by defendant in support of its argument do not dictate a different result. The designs at issue in both cases were composed entirely of unprotectable public domain elements. In *Odegard, Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005), the design was composed of vines and branches, and in *Nicholls v. Tufenkian Import/Expert Ventures, Inc.*, 367 F.Supp.2d 514, 521 (S.D.N.Y. 2005), the design was composed of a rectangular array of bisected circles. Narrower protection was appropriate in these cases because the designs included unoriginal ornamentation or geometric shapes. In contrast, the Lulu design's elements are neither unoriginal ornamentation nor geometric shapes, but rather entirely original elements that even defendant cannot describe in a single word.

**A.      The individual elements and overall composition of the Lulu design are original.**

Under 17 U.S.C. § 410(c), the Lulu copyright registration certificate constitutes *prima facie* evidence that Angela Adams' copyright is not only valid, but also that its work is original. *See Johnson v. Gordon*, 409 F.3d 12, 17 (1st Cir. 2005). The burden, is therefore, on Surya to prove that Lulu is "'unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of copyright protection.'" *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).

In its attempt to sustain that burden, Surya engages in a willful misreading of Angela Adams' testimony.  Def. Br. at 9.  In fact, Ms. Adams testified that although she was not the first to create a design comprising oval or irregular circular motifs, her design was original:

> Q   During your years studying design, you had seen designs utilizing ovals and irregular circular shapes before, correct?
>
> A.  Probably.
>
> Q. You didn't copy any of those designs in making your Lulu Design?
>
> A. No.
>
> Q. That came out of your own head?
>
> A. Right.

Plf. SMF at ¶93.

In making its argument, Surya ignores the fact that the term "original" has a specific definition in this context, as the Supreme Court explained:

> The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a

6

slight amount will suffice. . . Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

What are we to make then of Surya's reference to purportedly "prior" works,[2] none of which look anything like Lulu? Def. Br. at 9. Very little. "Novelty or uniqueness is not a requirement for copyright protection, and 'the search for prior art that frequently goes into a challenge to a patent plays no part in a copyright case.'" *Fasa Corp. v. Playmates Toys, Inc.*, 912 F. Supp. 1124, 1147 (N.D. Ill. 1996) (quoting 2 NIMMER ON COPYRIGHT § 2.01[A] n. 11).

At best, defendant finds precedent for some organic and rounded shapes, but no examples of substantially similar expression of Lulu's elements, and certainly no examples of a similar combination of elements as those that make up the Lulu design. If anything, defendant's examples of "prior" works confirm that there are multiple ways to express and arrange organic shapes in a two dimensional design, further supporting the originality of Angela Adams' design and highlighting the pervasive similarities between the Lulu and Goa designs. *See Boisson v. Am. County Quilts and Linens*, 273 F.3d 262, 270 (2d Cir. 2001) (defendants' own evidence revealed multiple formations for arranging and displaying alphabet on quilts).

Given the numerous ways to express and arrange "round-ish or oval shapes," and because it is undisputed that Lulu's individual elements and its overall composition are original, the Lulu design is entitled to broad, not "thin," protection.

---

[2] Defendant's expert witness, Maria Tulokas, testified that defendant's counsel had given her hundreds pages of illustrations depicting rugs incorporating organic and rounded motifs. She included 12 of those designs as exhibits to her Affidavit in Support of Defendant's Motion. There was no testimony about when any of these designs were created. Plf. SMF at ¶108.

7

**B. The elements of the Lulu design are not ordinary geometric shapes.**

Even the most casual observer can appreciate that the elements of the Lulu design are not geometric forms.  They are neither ovals nor circles, and they defy description according to any mathematical  formula.  Indeed, no one has ever come up with any term that describes the shapes in meaningful detail.  Defendant refers to them as "irregular abstract forms based on organic shapes found in nature," and as "round-ish or oval."  Plf. SMF at ¶94.  Defendant's expert refers to them as "oval shape."  *Id.* at ¶95.  Angela Adams' expert refers to them as "irregular ovals," and "biomorphic shapes."  *Id.* at ¶96.  Ms. Adams was at a loss as to what to call them, sometimes referring to them as "round-ish organic shapes."  *Id.* at ¶97.  Whatever the parties wish to call them, it is plain that the elements of the Lulu design are not common geometric forms and that they are entirely unlike the elements of any design of record in this case -- except for the accused Goa Design.

Unlike "squares," "circles," or "triangles," none of the terms used to describe Lulu's elements would enable someone unfamiliar with the design to reproduce them from description alone.  Indeed, it is the *irregular* aspect of the elements that distinguish them from geometric forms, which are *regular* by definition and capable of a precise mathematical description.

Despite the plain fact that Lulu's elements are not geometric, defendant still tries to rely on cases such as *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC.*, 259 F.3d 25 (1st Cir. 2001) (rectangular labels), and *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp*., 266 F.2d 541 (2d Cir. 1959) (circular, rectangular and octagonal shapes).  These cases are inapposite because the elements of the Lulu design cannot be deduced to a single common expression of form, let alone defined as a geometric shape.

### C. The merger doctrine is not relevant.

Surya further argues for "thin" protection, alleging that the idea being expressed in the Lulu design may only be expressed in a limited number of ways, and as such the idea and its expression merge into an inseparable whole. Def. Br. at 12. Merger, which only applies where an idea and the expression of that idea merge into an inseparable whole, such as the design of a candy cane, *Ellison Educ. Equip. v. Tekservices, Inc.*, 903 F. Supp. 1350, 1360 (D. Neb. 1995), however, is inapplicable here.

Noticeably absent from defendant's argument is an identification of the idea that merges with Lulu's expression. Rather, defendant identifies at least five different ideas. Def. Br. at 12. Defendant's inability to identify any single idea is not surprising, however, because as an abstract visual work, the Lulu design cannot be reduced to an idea. For this reason alone defendant's argument fails: without an identifiable idea, there can be no "merger."

## II.   THE COURT SHOULD DENY SURYA'S MOTION FOR SUMMARY JUDGMENT BECAUSE IT APPLIES THE WRONG LEGAL TEST.

Surya agues that before determining whether the works at issue are substantially similar, the copyrighted work must be "dissected" to remove any features mandated by the idea being expressed. Def. Br. at 7. Although the dissection test might be applied in other contexts, it is not useful here because the Lulu design is an abstract visual work that does not express an idea. This Court should decline to apply the dissection test to such an abstract visual work, and instead use the "total concept and feel test," which is more reasonable in this context.

### A.   The Lulu design is an abstract visual work that does not express any one idea.

Abstract art is generally understood to mean art that does not depict objects in the natural world, but instead uses color and form in a non-representational way. With abstract art, it is the

artist's powers of invention (rather than imitation) that creates the design and for which the design is appreciated and enjoyed—as a unique expression. Thus, as an abstract work, the Lulu design is not an expression of any idea. Rather, it is a combination of abstract elements, which Ms. Adams intended to be "a relaxing organic design," rather than an expression of any one thing. Plf. SMF at ¶98.

Importantly, Ms. Adams could not identify any single inspiration for her design. Rather, she identified "things we see here in Maine," such beach stones, bubbles in the ice, barnacles on a rock and the profile of a wood pile as a few of her inspirations. *Id.* at ¶99. Given the lack of any one *inspiration* for the design, it is not surprising that Ms. Adams could not identify any one *idea* it expressed, instead leaving any interpretation to the observer.

The observer is no better off, however. Even the parties' respective experts differ as to what the Lulu design expresses. Defendant's expert felt that the elements reflected something organic, only *possibly* river stones. *Id.* at ¶100. Plaintiff's expert, Prof. Wethli, finds them to be "like a still from a motion picture of a living cell." *Id.* at ¶101.

Thus, the Lulu design was neither inspired by, nor is it an expression of, one singular idea. To its creator it expresses an organic form found in her surroundings here in Maine; to two expert observers it expresses something different. In sum, the Lulu design is purely expressive and is entitled to broad protection under the copyright law.

**B.    The dissection test should not be applied to an abstract visual work.**

There are no reported cases applying the dissection test to abstract visual works, and its application to visual works in general is limited. *See Yankee Candle*, 259 F.3d at 34 (candle labels); *Concrete Mach. v. Classic Lawn Ornaments*, 843 F.2d 600, 607 (1st Cir. 1998) (realistic concrete deer); *Segrets, Inc. v. Oilman Knitwear Co., Inc.*, 42 F. Supp.2d 58, 75 (D. Mass. 1998)

(Southwestern patterned sweaters); *Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.,* 730 F. Supp. 1165, 1186 (D. Mass. 1989) (decorative flags). In short, the visual works dissected by the courts have either consisted largely of unprotectable elements, such as the rectangular labels and stock photos in *Yankee Candle*, or subject matter capable of only a few possible expressions, such as the concrete deer in *Concrete Machine*. These works have not resembled the entirely original and purely expressive design at issue here.

The threat of rendering a work unprotectable through dissection is particularly acute when applied to abstract works. That is because an abstract work, by definition, consists entirely of expression and cannot be distilled to a single idea. Plf. SMF ¶102. Thus, one cannot readily dissect an abstract work to determine "those aspects of the expression that are not necessarily mandated by the idea [the work] embodies." *Concrete Mach.*, 843 F.2d at 608.

Moreover, because abstract works do not express any one idea, their originality depends largely on the overall composition, rather than any single element. Thus, mechanical deconstruction of an abstract work to its protectable elements ignores the overall composition, and with it the author's original expression. For example, Piet Mondrian's *Composition with Yellow, Blue, and Red* (shown below), consists of an arrangement of straight lines, geometric patters and colored blocks.



If one were to dissect the work, removing unprotectable elements, all that would remain is a blank canvas. Such an exercise neither achieves the objective of the dissection test, to separate protectable expression from unprotectable ideas, nor credits Mondrian's originality.

Considering Mondrian's *Composition with Yellow, Blue, and Red*, the Ninth Circuit in *North Coast Industries*, acknowledged importance of the overall composition of an abstract work and the danger of engaging in dissection. There, the copyrighted design was influenced by, but not copied from, Mondrian's work. The defense to the action was that plaintiff's design could not be copyrighted because it was not "original." 972 F.2d at 1033-34. The circuit court held that variations in the color block scheme and lines could constitute original works, although not unique. *Id.* at 1034. The court explained:

> If we were to accept the view that, as a matter of law the differences in the
> placement of geometric shapes should be regarded as trivial, we would be forced
> to conclude that Mondrian's creativity with geometric shapes ended with his first
> painting, and that he went on to paint the same painting a thousand times. This is
> not the judgment of art history, and it cannot be the correct judgment of a court as
> a matter of law.

*Id.* Thus, confronted with an abstract work, the Ninth Circuit considered the work as a whole rather than first dissecting it to ascertain the protectable elements.

Valuing the overall composition, the Seventh Circuit takes a similar approach: "dissection is inappropriate since the substantial similarity inquiry is conducted from the perspective of the 'ordinary observer' who 'unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 939 (7th Cir. 1989) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)).

Similarly, in the Second Circuit:

> [A] court is not to dissect the works at issue into separate components and
> compare only the copyrightable elements. To do so would be to take the "more

12

> discerning" test to an extreme, which would result in almost nothing being
> copyrightable because original works broken down into their composite parts
> would usually be little more than basic unprotectible elements like letters, colors
> and symbols. This outcome — affording no copyright protection to an original
> compilation of unprotectible elements — would be contrary to the Supreme
> Court's holding in *Feist Publications*.

*Boisson*, 273 F.3d at 272 (2d Cir. 2001).  Likewise, in the Eighth Circuit, the inquiry continues to be whether the reasonable observer would find the works, taken as a whole without first dissecting them, to be substantially similar.  *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 966 (8th Cir. 2005).

Thus, for abstract works, instead of dissection, the more appropriate analysis is the "total concept and feel" test, which avoids unnecessarily deconstructing a work to an unattainable idea, while crediting the work's overall composition.  Consideration of the work as a whole is particularly appropriate because an "infringement analysis is not simply a matter of ascertaining similarity between components viewed in isolation." *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*,338 F.3d 127, 134 (2d Cir. 2003). This is because:

> defendant may infringe on plaintiff's work not only through literal copying of a
> portion of it, but also by parroting properties that are apparent only when
> numerous aesthetic decisions embodied in plaintiff's work of art - the excerpting,
> modifying, and arranging of public domain compositions ... are considered in
> relation to one another.

*Id.*  In fact, this very approach has been endorsed by courts in the First Circuit, notwithstanding the dissection test.  In *Flag Fables,* the court acknowledged the dissection test, but nonetheless applied the total concept and feel test on its way to finding substantial similarity between the eight designs at issue.  730 F. Supp. at 1179.  In each instance the court noted the idea expressed in each design, but rather than remove the idea form the analysis, the court considered the overall aesthetic to determine substantial similarity.  *Id.*

The difference in approach is particularly relevant here because an ordinary observer of a visual design is predisposed to evaluating similarities between the designs as a whole, rather than first filtering out any unprotectable elements. As Learned Hand observed in *Peter Pan Fabrics*:

> In the case of verbal "works," it is well settled that…there can be no copyright in the "ideas" disclosed but only in their "expression,"…In the case of designs, which are addressed to the aesthetic sensibilities of the observer, the test is, if possible, even more intangible.

274 F.2d at 489.  Judge Hand's sentiment was recently echoed by the court in *Mannion v. Coors Brewing Co.*, 377 F. Supp.2d 444, 461 (S.D.N.Y. 2005), where the court observed:

> In the visual arts, the distinction [between idea and expression] breaks down.  For one thing, it is impossible in most cases to speak of the particular "idea," captured embodied, or conveyed by a work of art because every observer will have a different interpretation.

In short, when the visual work is abstract, such as the Lulu design, it is impossible to distinguish between idea and expression.

**C.** **Even if the court were to apply the dissection test, it should result in a finding that the Lulu design is entirely expression and entitled to broad protection.**

Although the "total concept and feel test" is the most applicable test for assessing the scope of copyright protection, if the court chooses to apply the dissection test to the Lulu design, it should find that it consists entirely of expression and is entitled to broad protection.  To dissect the work, the court would have to first identify which elements of the Lulu design are unoriginal and what idea is being expressed. *Yankee Candle*, 259 F.3d at 34.  But set forth above, the Lulu design is an entirely original abstract work that does not express any idea.  Accordingly, proper application of the dissection test to the Lulu design would leave the design intact, and would dictate that the Court compare the Lulu design in its entirety side-by-side with the accused Goa design to determine whether the two works are substantially similar.

III. **THE COURT SHOULD DENY SURYA'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE IS AT LEAST A DISPUTED ISSUE OF FACT WHETHER THE LULU AND GOA DESIGNS ARE SUBSTANTIALLY SIMILAR.**

    A.    **Because substantial similarity poses a question of fact, to be decided by an ordinary observer, summary judgment on the issue is disfavored.**

Given the obvious fact-based nature of the substantial similarity inquiry, a grant of summary judgment is exceedingly rare. *See Segrets*, 207 F.3d at 62 (summary judgment on substantial similarity is "unusual."); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) ("[b]ecause substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation."). This is particularly true in cases of visual works.  *See, e.g. Bryant v. Gordon*, 483 F.Supp.2d 605 (N.D.Ill. 2007) (issue of material fact as to whether photographs were substantially similar); *Scientific Image Center Mgmt., LLC v. Brandy*, 415 F.Supp.2d 566 (W.D.Pa. 2006) (issue of material fact as to whether advertisements were substantially similar); *Mannion*, 377 F.Supp.2d at 448 (S.D.N.Y. 2005) (issue of material fact as to whether billboard advertisement and copyrighted photograph were substantially similar).

    B.    **Applying the "total concept and feel" test, which is most appropriate for abstract visual works such as Lulu, there are material issues of fact in dispute.**

Under the "total concept and feel" test the determination whether there is substantial similarity is made by the "ordinary observer" test, as described in its classic formulation by Judge Hand: "whether the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics*, 274 F.2d at 489.

Entirely ignoring the overall composition, defendant points out differences between the various elements of the two designs.  That is the wrong approach.  Viewing the Goa and the Lulu

designs side-by-side, the striking similarities between the two are apparent to any "ordinary observer." The comprehensive list of specific similarities includes elements that are unusual, not commonplace "scenes à faire." These similarities include the use of irregularly, loosely configured, organic elements, that have the appearance of being hand drawn. In addition, the arrangement of these elements relative to one-another creates a non-repeating irregular pattern that appears to extend beyond the edge of the design. Moreover, the designs have similar overall density and weight given the size, scale, location and number of elements.

Further, the arrangement of individual elements with varying space between them creates an impression of movement amongst the elements. This dynamic effect gives both designs an overall look and feel that is substantially similar.

Indeed, the arrangement and composition of spaces and elements in a design is protectable, regardless of the protectability of any single element. For example, in *Tufenkian* the court considered a copyrighted rug design that combined two designs in the public domain and "selectively eliminated numerous design motifs, creating a more open, less busy aesthetic." The court found that a similar selection of design motifs in defendant's work constituted infringement. 338 F.3d at 136. Similarly in *Peel & Co., Inc. v. The Rug Market*, the court found a triable issue of fact on similarity arising from the arrangement of commonplace elements such triangles, a floral medallion and border of small squares. 238 F.3d 391, 397-98 (5th Cir. 2001).

The fact that both designs also employ similar color schemes is the icing on the cake. Surya's use of non-identical colors will not excuse its infringement. *See Hamil Am., Inc. v. GFI*, 193 F.3d 92, 103 (2d Cir. 1999) ("[T]he copyright…is for the design itself, and is not limited to a specific color arrangement. Thus, the fact that [plaintiff] did not make all of the colorways used

by [defendant] does not limit the scope of [defendant's] infringement."). The use of similar subdued colors and color combinations adds to the case for substantial similarity.

Given the similarities in color scheme, the use of irregular loosely drawn elements, arranged in a similar fashion to create two designs having similar overall density and weight, as well as the unique combination of these elements to create a sense of movement, there is a strong case of substantial similarity here. Plaintiff should not summarily be denied the opportunity to have a jury evaluate this issue.

> 1. *Surya asks this Court to perform an irrelevant comparison between the rugs of the two parties, rather than comparing the copyright design with the accused design.*

Although the copyright is to a design, not a rug, Surya bases its argument on a comparison of the Lulu and Goa *rugs*. *See, e.g.,* Def. Br. at 14. This analysis is improper. The infringement analysis must be focused upon a comparison of the copyrighted work and the accused work because to find infringement, the accused work must be "substantially similar to *the copyrighted work*." *Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (emphasis added). Commonly, substantial similarity is assessed by a side-by-side comparison of the *copyrighted work* and the accused design. *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).

To the extent the Lulu rugs are at all relevant, they are evidence that Surya has engaged in unauthorized copying of a derivative work. Courts have long held that copyright protection is available to an uncopyrighted derivative work to the extent that it is derived from a work that is validly copyrighted. *See Johnson*, 409 F.3d at 20 ("a valid, enforceable copyright on an underlying work extends to protect those elements of a new work that are derived directly from the underlying work."); *Grove Press, Inc. v. Greenleaf Publ'g. Co.*, 247 F. Supp. 518, 527 (E.D.N.Y. 1965) ("Unauthorized copying may be effected either directly or indirectly; thus

copying from a copy is no less an infringement than copying from the original copyrighted work."). Thus, copying an unregistered derivative may give rise to liability based upon copyright registration of the underlying original work contained in the derivative.

In short, where the accused design is substantially similar to the copyrighted design, it is irrelevant to the issue of substantial similarity whether the number and relative size of elements in the various Lulu rugs are different or similar to the Goa rugs.

> ## 2. *Substantial similarity is determined by ordinary observers, and is thus ideally suited for resolution by a jury.*

While the expert may possess both greater powers of discernment in the finer points of a given design and the ability to articulate how two patterns are subtly dissimilar, the ordinary observer - being less biased by nuances of design, color, production methods, and so forth - is often in a better position to recognize the obvious, more salient characteristics in comparing two patterns or designs. Thus, the ordinary observer, the very person for whom the designs were intended, is best suited for assessing the merits of a work, as recognized by Justice Holmes:

> It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits.

*Bleistein*, 188 U.S. at 251-52. For this reason, the "ordinary" or "average" lay observer is typically the standard by which infringement of a visual work is judged and is an issue ideal suited for resolution by a jury. *See Positive Black Talk, Inc. v. Cash Money Records*, 394 F.3d 357, 374 (5th Cir. 2004)) ("whether two works are substantially similar is a question for the jury itself to determine by examining the actual works in question"). Therefore, this court should permit a jury, the very ordinary observers for whom the instant works were created, to make a side-by-side comparison and determine the issue of substantial similarity.

3.   *The differences in opinions of experts, as the observer, preclude summary judgment on substantial similarity.*

In support of its motion, defendant submitted the expert report of Maria Tulokas without taking affirmative position as to whether the Court should receive her testimony on the issue of substantial similarity. Although courts differ on whether expert testimony is admissible on this issue, the First Circuit has not taken a position.  *See T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 116 (1st Cir. 2006) ("We leave to the district court the determination of whether this may be a case in which expert testimony would be helpful on the issue of substantial similarity.").   For purposes of this motion, Angela Adams has no objection to this Court considering such evidence.

The conflicting expert evidence presented by both parties here further confirms that summary judgment is not warranted, as even the "reasonable minds" of experts differ as to whether the Lulu and Goa designs are substantially similar.  *See Shine v. Childs*, 382 F. Supp. 2d 602, 614 (S.D.N.Y. 2005) (if court were to accept differing expert testimony "it would have no choice but to deny summary judgment on [substantial similarity].").

In the opinion of Angela Adams' expert, Prof. Wethli, a Bowdoin professor who has practiced and taught visual arts for more than 30 years, there is "striking similarity between the Lulu and Goa designs, which suggests that Lulu was copied to create the Goa Design." Plf. SMF at ¶103.  Most significant to Prof. Wethli is the combination of the following similarities:

-- the use of an irregular, loosely drawn oval as the basic element of the design;

-- the overall arrangement of these ovals in various sizes, shapes, and orientations to create a non-repeating, irregular pattern that also appears to extend beyond the edge of the rectangle;

-- a seemingly random patterning of these elements, with sufficient and varying spaces between them to imply potential movement between the parts;

19

-- the overall density and visual weight of the design in terms of the size, scale, location, and number of elements; and

-- the use of colors--and, more significantly, color combinations--that are identical, at least in terms of color theory.

*Id*. at ¶104.

Prof. Wethli is especially struck by the similarity in appearance between the irregular oval shapes in both designs and how their size, scale and relationship to one another implies potential movement. *Id*. at ¶105. Specifically, both designs achieve this effect in the same fashion through irregular spacing of the elements and cropping of the ovals at the outer edges of the design. *Id*. at ¶106. Prof. Wethli offers a concluding opinion that the multiple similarities are unlikely to arise had the works been independently created. *Id*. at ¶107.

The difference in expert opinions confirms that material issues of fact exist on the issue of substantial similarity, and precludes dismissal here.

## CONCLUSION

There being material facts in dispute, as set forth above, Surya is not entitled to summary judgment in its favor on the issue of substantial similarity.

Respectfully submitted,

Dated:  February 5, 2008

 /s/ Michael J. Sullivan
Robert H. Stier, Jr.
Michael J. Sullivan
Sean L. Sweeney
PIERCE ATWOOD LLP
One Monument Square
Portland, ME 04101
(207) 791-1100

Margaret Minister O'Keefe
ANGELA ADAMS HOLDINGS, LLC
273 Congress Street
Portland, Maine 04101
(207) 774-3523

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Michael J. Sullivan, hereby certify that on February 5, 2008, I served the foregoing pleading, by filing with the Court's ECF system, causing a copy of the same to be electronically mailed to:

> Holly M. Polglase, Esq.
> Campbell, Campbell, Edwards & Conroy, P.C.
> One Constitution Plaza
> Boston, MA 02129
> (617) 241-3000
> hpolglase@campbell-trial-lawyers.com

Dated:  February 5, 2008                      /s/ Michael J. Sullivan
                                              Michael J. Sullivan