UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANGELA ADAMS LICENSING, LLC, et al., )<br>)<br>Plaintiffs )<br>)<br>v. )<br>)<br>SURYA CARPET, INC., )<br>)<br>Defendant ) | Docket No. 07-77-P-H |

MEMORANDUM DECISION ON MOTION TO EXCLUDE TESTIMONY AND
RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

The plaintiffs, Angela Adams Licensing, LLC and Angela Adams Designs, LLC, move to exclude the testimony of an expert witness designated by the defendant, Surya Carpet, Inc. I deny the motion. The defendant moves for summary judgment in this action alleging copyright infringement. I recommend that the court deny that motion as well.

**I. Motion to Exclude**

The plaintiffs seek to exclude the testimony of Maria Tulokas, who has been identified as an expert witness by the defendant. Plaintiffs' Motion to Exclude the Testimony of Defendant's Proposed Expert Maria Tulokas ("Tulokas Motion") (Docket No. 42) at 1. They contend that Tulokas's testimony, as rendered at her deposition, is inadmissible because it compares rugs made by the plaintiffs with rugs made by the defendant when the only appropriate comparison is between the plaintiffs' copyrighted design and the rugs made by the defendant. *Id*. at 4-7. They also attack her testimony as being premised on an unreliable methodology and conclusory. *Id*. at

1

7-8. Finally, they assert that the testimony improperly "references" the creation of a design by a third party. *Id*. at 8-10.

Not surprisingly, the defendant takes issue with each of these contentions, although it devotes much of its opposition to unhelpful, repeated assertions that the plaintiffs' own designated expert has done what the plaintiffs characterize as inadmissible when done by the defendant's expert. Surya Carpet, Inc.'s Opposition to Plaintiff's [sic] Motion to Exclude, etc. ("Tulokas Opposition") (Docket No. 56).

### A. Applicable Legal Standard

The plaintiff seeks to exclude Tulokas's testimony pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), on grounds that it is speculative, unreliable, insufficiently grounded and unhelpful to the trier of fact. Tulokas Motion at 2-3. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, "it is the responsibility of the trial judge to ensure that an expert is sufficiently qualified to provide expert testimony that is relevant to the task at hand and to ensure that the testimony rests on a reliable basis." *Beaudette v. Louisville Ladder, Inc*., 462 F.3d 22, 25 (1st Cir. 2006). With respect to reliability:

> In *Daubert,* the Supreme Court set forth four general guidelines for a trial judge to evaluate in considering whether expert testimony rests on an adequate foundation: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline. However, these factors do not

>   constitute a definitive checklist or test, and the question of admissibility must be tied to the facts of a particular case.

*Id.* (citations and internal quotation marks omitted); *see also, e.g., Zachar v. Lee*, 363 F.3d 70, 76 (1st Cir. 2004) ("The court's assessment of reliability is flexible, but an expert must vouchsafe the reliability of the data on which he relies and explain how the cumulation of that data was consistent with standards of the expert's profession.") (citation and internal quotation marks omitted).

As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation and internal quotation marks omitted). "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* (citation and internal quotation marks omitted). That said, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) (citation and internal quotation marks omitted).

### B. Analysis

The amended complaint alleges infringement of copyright registration number VAu 499-774 for a design with the title "Lulu." First Amended Complaint, etc. ("Complaint") (Docket No. 28) ¶ 11 and generally. It alleges that the defendant's so-called Goa rugs, identified as product numbers G-108, G-124 and G-125, infringe on this copyright. *Id.* ¶¶ 13-16, 24-26.

The plaintiffs ask the court to exclude any testimony of Tulokas on the following issues:

3

- Substantial similarity of the Lulu Design and the Accused Designs, including any similarity or dissimilarity between the overall design, scale and shape, distribution and line quality of the motifs, movement created by the layout of the motifs, and color of the designs.

- Copying of the Lulu Design, including probative similarity of the designs.

- Independent creation of the Accused Designs.

Tulokas Motion at 10. They seek this relief because, they assert, Tulokas fails to identify which designs she is comparing, wrongly compares the plaintiffs' rugs with the defendant's rugs rather than the plaintiffs' design with the defendant's rugs, states only a conclusion with respect to copying and wrongly uses a third-party design as the basis for her opinion on independent creation. *Id.* at 4-10.

"To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Tulokas's proposed testimony goes to the second element. Absent direct evidence, "an inference of copying may be drawn from evidence that an alleged copier had access to the copyright holder's previously created design and that there is a high degree of similarity between the works[.]" *Mag Jewelry Co. v. Cherokee, Inc.*, 496 F.3d 108, 114 (1st Cir. 2007). Again, Tulokas's testimony goes to the second part of this test. "[A] side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'" *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (footnote omitted). "Th[is] substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression." *Johnson v. Gordon*, 409 F.3d 12, 18

(1st Cir. 2005). Even if a plaintiff proves both copying and substantial similarity, a defendant may escape liability by showing that its product was independently created. *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1513 (1st Cir. 1996).

The plaintiffs first complain that Tulokas compares the defendant's rugs with the rugs made by the plaintiffs, which they characterize as "derivative works," rather than the copyrighted design itself, which appears on many products produced and sold by the plaintiffs. Tulokas Motion at 1-2 & n.1. The defendant responds that Tulokas compared its rugs with both the copyrighted design and the plaintiffs' rugs using that design. Tulokas Opposition at 4. That is what Tulokas says that she has done: "I have been asked to review both the Lulu design, as expressed in rugs and in the copyrighted drawing on file in the U.S. Copyright Office, and the Surya Goa designs 108, 124, and 125[.]" Letter dated December 6, 2007 from Maria Tulokas to Holly M. Polglase, Esq. ("Report") (Exh. A to Declaration of Michael J. Sullivan, etc. (Docket No.43)) at 2. I find the report to be sufficiently clear to allow a reader to determine when Tulokas is comparing the plaintiffs' design to the defendant's rugs and when she is comparing rugs to rugs. The importance of this distinction may be argued at trial. Nothing in what the plaintiffs have presented in connection with this motion, including the authorities they cite, requires that testimony comparing rugs to rugs be excluded. If, indeed, "[t]here is no mention of any comparison of the scale and shape of the elements of the Lulu Design with those of the Accused Designs[,]" as the plaintiffs contend, Tulokas Motion at 5, that omission goes to the weight to be accorded the expert testimony, not its admissibility. If "[c]omparing the collections of rugs [is] irrelevant and threatens to mislead the jury," *id*. at 7, that issue can be pressed and decided at trial. It is not grounds to exclude Tulokas's testimony in its entirety.

The plaintiffs next assert that "[o]n the issue of copying Ms. Tulokas spends a single sentence," which they contend "does not discuss either probative similarity or access" and accordingly is a legally insufficient opinion with respect to copying. *Id*. at 7-8. First, nothing in Tulokas's report suggests that she was asked to opine on the defendant's access to the plaintiffs' design, nor does she do so. That does not mean that the defendant cannot prove that element of the test for copying by some other means, possibly including one or more fact witnesses. Next, I cannot find the quoted phrase in Tulokas's report and, given the plaintiffs' failure to provide a pin cite for the quotation, can only assume that it appears somewhere in her deposition testimony, which this court will not scour in an attempt to locate the quoted language.

Nor do I find the portion of Tulokas's report that discusses a third party's design to be objectionable or to provide a basis for excluding all or part of her proposed testimony. Tulokas is not, contrary to the plaintiffs' characterization, "look[ing] to prior designs to prove independent creation." *Id*. at 9. Rather, she uses the similar forms included in that person's design to illustrate her point that those forms are found frequently in the work of others, not just in the plaintiffs' design and the defendant's rugs. Tulokas Report at 5-6. That is an acceptable means of illustration of that point.

The plaintiffs' motion to exclude all or portions of Tulokas's expert testimony is denied.

## II.   Motion for Summary Judgment

### A.   Summary Judgment Standard

*1. Federal Rule of Civil Procedure 56.* Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the

nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

2. *Local Rule 56.*  The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District.  *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's

statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

### Factual Background

The statements of material facts submitted by the parties establish the following undisputed material facts.

The plaintiffs obtained a copyright from the United States Copyright Office on a design they refer to as "Lulu" in July 2000, copyright number VAu 499-744. Defendant Surya Carpet Inc.'s Amended Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("Defendant's SMF") (Docket No. 49) ¶ 1; Plaintiffs' Response to Defendant's Amended Statement of Material Facts ("Plaintiffs' Responsive SMF") (Docket No. 60) ¶ 1. The plaintiffs apply their designs to a range of items, such as rugs, fabrics, pillows, glassware and furniture. Plaintiffs' Additional Material Facts ("Plaintiffs' SMF") (included in Plaintiffs' Responsive SMF beginning at 19) ¶ 74; Surya Carpet, Inc.'s Reply to Plaintiffs' Response to Defendant's Amended Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 67, beginning at 21) ¶ 74. The Lulu design first began appearing in the plaintiffs' custom made Collection Rugs in 1999. *Id*. ¶ 80. Beginning in 2005 retail rugs featuring the Lulu design were introduced in green and other colorways. *Id*. ¶¶ 82-83. The plaintiffs allege that the defendant's Goa rug, product numbers G-108, 124 and 125, infringes upon their Lulu design. Defendant's SMF ¶ 3; Plaintiffs' Responsive SMF ¶ 3. The three product numbers refer to the same design in different colors. *Id*. ¶ 4.

Angela Adams is the co-owner and co-founder, with her husband, of both plaintiff entities. *Id*. ¶ 10. She is the author of the copyrighted Lulu design. *Id*. ¶ 11. She considers the Lulu design to be a modern organic geometric design. *Id*. ¶ 12. The Lulu design was inspired by beach stones or rocks, bubbles in ice, barnacles on a rock, a wood pile, and other "things that we see here in Maine[.]" *Id*. ¶¶ 13-14. Adams testified that the idea of stones, pebble or bubble shapes in a design is not original to her. *Id*. ¶¶ 15-16.[1] In creating the Lulu design, Adams made

---

[1] The plaintiffs object to paragraphs 15 and 16 of the defendant's statement of material facts "to the extent that [they] state[] a legal conclusion regarding the originality of the Lulu design." Plaintiffs' Responsive SMF ¶¶ 15-16. Neither paragraph purports to state any such conclusion. The objections are overruled. Nor can the paragraphs reasonably be read to "assert[] that the elements of the Lulu design are not original to Ms. Adams," the basis for the

9

conscious choices to place the motifs in different shapes and sizes in certain locations on the design to create an overall design that would be pleasing to the eye. *Id.* ¶ 17. She refers to the way the elements are placed in the design as the "composition" of the design. *Id.* ¶ 19.

The Lulu design is used on rugs that are sold as retail rugs in standard sizes and colors and as custom rugs which can be made in any shape, size or color. *Id.* ¶ 20.[2] The Goa rug and the Lulu design are nor mirror images of each other. *Id.* ¶ 21. Both the Lulu design and the Goa rug contain biomorphic elements with irregular abstract forms based on organic shapes found in nature. *Id.* ¶ 22. The Lulu design elements can be described as round-ish organic shapes of varying sizes. *Id.* ¶ 23. The use of organic irregular shapes is not original to Adams. *Id.* ¶ 26.[3] Both the Lulu design and the Goa rug have elements that leave the edge, but the elements that leave the edge are not exact duplicates or mirror images of each other. *Id.* ¶ 28. The use of shapes that cut off at the edge and appear to extend beyond the edge is not original to Adams. *Id.* ¶ 29.[4] No two elements in the Lulu design are exactly the same. *Id.* ¶ 32.[5]

The distance between the elements in the Lulu design varies. *Id.* ¶ 42.[6] The distance between the elements in the Lulu design and the distance between the elements in the Goa rug

---

plaintiffs' alternate denial of these paragraphs. *Id*. I therefore consider the paragraphs to be admitted, with the plaintiffs' alternate qualification. *Id*.

[2] The plaintiffs object to this paragraph of the defendant's statement of material facts on the ground that "[t]he alleged fact is premised on an irrelevant rug-to-rug comparison." Plaintiffs' Responsive SMF ¶ 20. No such comparison is implied by or necessary to this background information. The objection is overruled. The plaintiffs admit the paragraph in the alternative. *Id*.

[3] The plaintiffs object to this paragraph and paragraph 29 of the defendant's statement of material facts "to the extent that [each] states a legal conclusion regarding the originality of the Lulu design." Plaintiffs' Responsive SMF ¶¶ 26, 29. No such conclusion may be read into the statements. The objection is overruled.

[4] *See* footnote 3, above.

[5] The plaintiffs object to two terms in paragraph 32 of the defendant's statement of material facts as "[v]ague[.]" Plaintiffs' Responsive SMF ¶ 32. I do not use either of these terms, so the objection is moot for purposes of this recommended decision.

[6] The plaintiffs object to single words in paragraph 42-45 of the defendant's statement of material facts as "[v]ague[.]" Plaintiffs' Responsive SMF ¶¶ 42-45. I do not use those words, so the objection is moot for purposes of this recommended decision.

are not identical. *Id*. ¶¶ 43-45.[7] The orientation of the elements in the Lulu design is not identical to the orientation of the elements in the Goa rug. *Id*. ¶ 46. The Lulu design was copyrighted with dark blue elements on a light blue background. *Id*. ¶ 47. The Goa rugs come in three colors: green with the elements outlined in brown; beige with the elements outlined in green/blue; and black with the elements outlined in blue. *Id*. ¶ 50.

The Lulu copyright design contains nineteen elements. *Id*. ¶ 53. The 2' by 3' Goa rug contains five elements. *Id*. ¶ 56. The 3'3" x 5'3" Goa rug has fourteen elements. *Id*. ¶ 59. The 5' x 8' Goa rug contains fourteen elements. *Id*. ¶ 62. The 8' x 11' Goa rug contains thirty-one elements. *Id*. ¶ 64. The Goa rug runner has seventeen elements. *Id*. ¶ 66. The 7'9" round Goa rug has twenty-one elements. *Id*. ¶ 70.

In September 2006 counsel for the plaintiffs sent a cease and desist letter to the defendant with respect to the Goa design. Plaintiffs' SMF ¶ 84; Defendant's Responsive SMF ¶ 84.[8] By the time the complaint in this action was filed, the defendant had been selling the Goa design for nearly a year and was advertising the design regularly in trade publications. *Id*. ¶ 87.[9] Not having heard from the defendant, the plaintiffs filed this action on May 1, 2007. *Id.* ¶ 88.[10] The defendant continues to sell the Goa design. *Id.* ¶ 89.[11]

### B. Analysis

The parties approach this motion with very different legal standards in mind. The defendant, the moving party, contends that the plaintiffs' copyright is entitled only to "thin" protection. Surya Carpet, Inc.'s Amended Motion for Summary Judgment, etc. ("Summary

---

[7] *See* footnote 6, above.
[8] The defendant objects to paragraphs 84, 87, 88 and 89 of the plaintiffs' statement of material facts "on the basis that the alleged fact is irrelevant because the only issue before the Court is whether the two designs are substantially similar." Defendants' Responsive SMF ¶¶ 84, 87-89. The defendant admits or qualifies these assertions in the alternative. I consider these facts to be relevant background information; the objections are overruled.
[9] *See* footnote 8, above.
[10] *See* footnote 8, above.
[11] *See* footnote 8, above.

Judgment Motion") (Docket No. 48) at 9-10. The plaintiffs take the position that their copyright is entitled to "broad" protection. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Summary Judgment Opposition") (Docket No. 59) at 5-9.

The First Circuit describes the elements of a claim of copyright infringement as follows:

> This Court conducts a two-part test to determine if illicit copying has occurred. First, a plaintiff must prove that the defendant copied the plaintiff's copyrighted work, either directly or through indirect evidence. Second, the plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar.
> * * *
> Whether there is substantial similarity between copyrightable expressions is determined by the "ordinary observer" test. The test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonably person would conclude that the defendant unlawfully appropriated the plaintiff's protected expression by taking material of substance and value. The determination of whether an allegedly infringing [item] is substantially similar to its alleged model or influence is not so simple a task, however, as a strict visual comparison of the two items. Any comparison between the two works must be informed by a key theoretical foundation of copyright law: that ideas cannot be copyrighted, and therefore that an artist can claim to own only an original manner of expressing ideas, not the ideas themselves[.]

*Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001) (citations and some internal punctuation omitted). The court went on to "dissect" the work at issue "to remove those aspects not protected by copyright[]" before comparing the works to determine the degree of similarity. *Id*. at 34. The degree to which the work at issue contains protected expression is a matter of law to be determined by the court. *Id*. at 34 n.5. In *Yankee Candle*, the First Circuit held that a "collection of common geometric shapes with a particular photographic technique is not sufficiently original to qualify for copyright protection." *Id*. at 35. Earlier, the First Circuit said, in a case on which the defendant places heavy reliance, that "[w]hen the idea and its expression are not completely inseparable, there may still be only a limited number of ways of

12

expressing the idea. In such a case, the burden of proof is heavy on the plaintiff who may have to show near identity between the works at issue." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc*., 843 F.2d 600, 606 (1st Cir. 1988) (citation and internal punctuation omitted).

In *Concrete*, the work at issue was a design for a concrete, life-sized deer, and the First Circuit said that "[t]he idea behind this particular expression can be briefly described as a 'realistic-looking concrete deer.'" *Id*. at 607. The idea and its expression in that case were close to being the same thing; in the words used by the First Circuit, "as idea and expression merge . . . a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not *required* by the idea." *Id*. (emphasis in original). The defendant in the instant case seizes upon the phrase "common geometric shapes" in *Yankee Candle* and contends that the Lulu design is a composition of such shapes, which "are in the public domain and not themselves protected by copyright[,]" so that this court should impose a heavy burden of proof on the plaintiffs, which they cannot meet. Summary Judgment Motion at 8-9. Relying on case law from the Southern District of New York, the defendant contends that the Lulu design is protected only in the way it combines "otherwise unprotectable elements" and that copyright protection in such cases is "thin because the scope of the copyright is limited to the particular selection or arrangement." *Id*. at 10.

However, the First Circuit in *Concrete* also says that

> as a work embodies more in the way of particularized expression, it moves further away from merger of idea and expression and receives broader copyright protection. This broader protection is available in the typical case of an original work embodying only one of an infinite variety of ways of expressing an idea.

843 F.2d at 607 (citations and internal punctuation omitted). From all that appears in the summary judgment record, the Lulu design is closer to an original work embodying only one of

an infinite variety of ways of expressing an idea than it is to a concrete, life-sized deer. The shapes in the Lulu design are not geometric shapes; they are irregular shapes. Defendant's SMF ¶ 22; Plaintiffs' Responsive SMF ¶ 22.

The Lulu design is obviously an abstract design. That fact distinguishes it from the works at issue in the case law cited by the defendant. In *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 367 F.Supp.2d 514 (S.D.N.Y. 2005), the court rejected a claim of copyright infringement because the plaintiff did not establish at trial that his geometric rug design had been copied by the defendant, *id*. at 517, 521-22. Thus, that court never reached the question at issue here, where, assuming that copying has been shown, the plaintiff must demonstrate substantial similarity between the Lulu design and the Goa rugs. Even if the *Nicholls* court's discussion of similarity, which can only be classified as *dicta*, were to be considered in the case at hand, the basis of that discussion was a conclusion that the geometric elements of the plaintiff's design, "a rectangular array of transected circles," were within the public domain. *Id*. at 523. The irregular shapes used in the Lulu design cannot accurately be described as "geometric elements" that are within the public domain. In *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F.Supp.2d 275 (S.D.N.Y. 2005), the design at issue incorporated "vines [that] have clearly defined leaf shapes, joint to the vines at one end of the leaf, as occurs in nature[;]" "[a]ll the leaves are leaf-shaped, not ovals[;]" and the vines and leaves appeared in abutting colored block separated by narrow-width parallel lines, *id*. at 278. The court held that the leaves, vines and borders were all in the public domain and as such not protected by the copyright at issue. *Id*. at 279. Accordingly, the "narrow scope of protection" allowed in that case, *id*., is not applicable in this case.

Because I reject the defendant's contention that the Lulu design must be "dissected" to determine its copyrightable elements, I do not reach its argument that the court must "look[] to

the doctrine of merger to determine how substantially similar the copy must be to infringe." Summary Judgment Motion at 11. It cannot properly be said that the Lulu design merges idea with expression. *Yankee Candle*, 259 F.3d at 35-36. In addition, it is not accurate to suggest that the First Circuit always applies the merger doctrine in copyright infringement cases. *See, e.g., John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 42-43 (1st Cir. 2003).

I proceed instead to the defendant's argument that the Lulu design and the Goa rugs are not substantially similar as a matter of law. Summary Judgment Motion at 17-19. The defendant recites several ways in which it contends that its Goa rugs and "the Lulu rugs" are different. *Id*. at 18. However, it is the Lulu design, not the rugs on which that design appears, that is copyrighted. The defendant appropriately refocuses its argument when it contends that "while the two designs incorporate unprotected modern ideas including the use of irregular ovals or circles which appear to go beyond the edge of the design and which imply movement, the protected elements of the Lulu design and rugs varies drastically from the Goa rugs." *Id*. But I disagree. As I have already noted, the defendant has not established that the Lulu design "incorporate[s] unprotected modern ideas." Substantial similarity is a fact-based question, making summary judgment unpopular in copyright litigation. *See, e.g., Yankee Candle*, 259 F.3d at 37; *see also Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C.Cir. 2002); *Warner Bros. v. American Broad. Cos*., 720 F.2d 231, 239 (2d Cir. 1983). I cannot conclude that the lack of substantial similarity between the Lulu design and the Goa rugs is "so clear as to fall outside the range of disputed fact questions[.]" *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986) (citation omitted). Contrary to the defendant's argument, Surya Carpet, Inc.'s Reply to Plaintiff's Opposition to Surya's Motion for Summary Judgment, etc. (Docket No. 66) at 6, I cannot conclude from the summary judgment record that "no rational factfinder could find

substantial similarity of protected expression[]" in this case. The defendant's circumscribed definition of what is protected expression in this case is central to its argument, and I do not find that definition appropriate under the circumstances. The defendant is not entitled to summary judgment on the showing made. *See Bryant v. Gordon*, 483 F.Supp.2d 605, 618 (N.D.Ill. 2007) (court could not say as matter of law that ordinary observer would detect differences between photographs without setting out to find them; an ordinary observer could regard their aesthetic appeal as the same).

### III. Conclusion

For the foregoing reasons, the plaintiffs' motion to exclude (Docket No. 42) is **DENIED**, and I recommend that the defendant's motion for summary judgment (Docket No. 48) be **DENIED** as well.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*


Dated this 10th day of March, 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge